# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TAMMY-LYN YAPP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12-cv-01095 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| ASTELLAS PHARMA GLOBAL ) | |
| DEVELOPMENT, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tammy-Lyn Yapp claims that she suffered gender-based discrimination during the course of her employment with Defendant Astellas Pharma Global Development, Inc. ("Astellas"). She also claims that she was terminated in retaliation for her complaints about that discrimination and for exposing fraud by one of the company's contractors. With this lawsuit, she seeks relief for these transgressions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Illinois common law of retaliatory discharge. Now before the Court is Astellas's motion for summary judgment on all of Yapp's claims. (Dkt. No. 36.) For the reasons detailed below, the Court grants Astellas's motion with respect to Yapp's gender discrimination claim and her state law retaliatory discharge claim, and denies the motion with respect to her Title VII retaliation claim.

## BACKGROUND

Yapp was hired by Astellas in January 2009 as a Senior Scientist at the company's Skokie, Illinois research facility. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 4, Dkt. No. 42.) Her specialty was flow cytometry, a procedure that allows examination of microscopic particles by suspending them in fluid and exposing them to laser emissions. (Def.'s Am. Answer ¶¶ 18,

20, Dkt. No. 35.) Flow cytometry technology allowed Astellas to test the effect of its drugs on blood cells. (*Id.* ¶ 23.) Before Yapp's employment at Astellas, the company used a third party, MedTox, to perform flow cytometry testing on its drugs. Yapp was hired to establish an in-house lab so that Astellas could perform the initial phases of that testing itself. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 18.) Yapp reported to Charles Van Sant, assistant director of the company's pharmacodynamics group; Van Sant reported to Ala Alak, who supervised the Skokie facility. (*Id.* ¶¶ 9-10.)

In May 2010, Yapp received a performance appraisal for the period from April 2009 through March 2010. (Ex. J to Def.'s Stmt. of Material Facts, Dkt. No. 38-10.) The appraisal was unfavorable: her performance was rated as either "low" or "poor" on a majority of listed objectives, and her overall rating was 2.2 out of a potential 5 points. (*Id.*) Along with the appraisal, Van Sant gave Yapp a performance plan document that purported to detail the improvements she needed to show to keep her position. (Ex. P to Def.'s Stmt. of Material Facts, Dkt. No. 38-16.) The plan was to extend for four months, with monthly objectives and reviews. (*Id.*) The plan document advised that Yapp could be terminated prior to the plan's proposed September 2010 end date if she failed to show improvement. (*Id.*)

On June 7, 2010, Yapp wrote a rebuttal to her appraisal. (Ex. J to Def.'s Stmt. of Material Facts, Dkt. No. 38-10.) In that rebuttal, she stated that her low ratings came as a surprise to her and further asserted: "I am completely confident to say that I feel I am experiencing harassment due to my gender." (*Id.*) Yapp also claimed that she was expected to work longer hours than the male scientists, that they were given resources to assist them in performing their duties while she was not, and that they received pay raises and bonuses while she did not. (*Id.*) On the same day, she made an appointment with the Equal Employment Opportunity Commission. She went to

see an EEOC representative on June 16, but was told that she had not suffered an adverse employment action. (Ex. QQ to Def.'s Stmt. of Material Facts, Joint Stipulation ¶¶ 4-6, Dkt. No. 38-43.)

On August 6, 2010, Van Sant and Yapp discussed her prospects for continued employment with Astellas. Although their recollections of the conversation differ, they agree that Van Sant expressed doubt that she would successfully complete her performance plan. (Yapp Dep. at 172, Dkt. No. 38-1; Van Sant Dep. at 92-93, Dkt. No. 44-1.) On August 9, 2010, Yapp completed an Astellas "Alleged Fraud and/or Scientific Misconduct Reporting Form," which she sent to Van Sant, Alak, and other company employees by e-mail two days later. (Ex. DD to Def.'s Stmt. of Material Facts, Dkt. No. 38-30.) In the form and an accompanying message, Yapp offered her assessment of MedTox's reports of its flow cytometry testing—she asserted that flaws in MedTox's test methods and reporting might have invalidated all of that company's flow cytometry work. (*Id.*)

Yapp went on medical leave in mid-August 2010. (Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 40.) She returned to work on November 4, 2010. (*Id.* ¶¶ 40-41.) According to Van Sant, Yapp's performance plan was restarted from the beginning upon her return. (Van Sant Dep. at 111-12, Dkt. No. 44-1.) In or around December 2010, Astellas found evidence that Yapp had used a company credit card for personal purchases. (Aff. of Amy McLean ¶ 17, Dkt. No. 38-40.) Astellas asserted that this conduct violated company policy and terminated Yapp's employment in January 2011. (*Id.* ¶¶ 17-19.)

In the present action, Yapp alleges that Astellas violated Title VII of the Civil Rights Act of 1964 by subjecting her to disparate treatment because of her gender and by terminating her in retaliation for her complaints about that treatment. She also alleges that she was terminated in

3

retaliation for her criticism of MedTox's flow cytometry testing, and that this action violated Illinois' common law prohibition of retaliatory discharge. Astellas seeks summary judgment on all of Yapp's claims.

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lee v. Keith*, 463 F.3d 763, 767 (7th Cir. 2006). On summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Walbridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). "In evaluating whether a genuine issue of material fact exists, all evidence and inferences must be viewed in the light most favorable to the nonmoving party." *Scott v. Edinburg*, 346 F.3d 752, 755 (7th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003)).

**I.     Standing and Judicial Estoppel**

In its motion, Astellas contends that Yapp's claims are barred by the doctrine of judicial estoppel. That doctrine has been held to bar a litigant from asserting a claim after she has failed to disclose its existence in a bankruptcy proceeding. *Cannon-Stokes v. Potter,* 453 F.3d 446, 447-49 (7th Cir. 2006). It is undisputed that on December 22, 2010, Yapp filed a petition for relief under Chapter 7 of the Bankruptcy Code. Schedule B of that petition required Yapp to disclose her personal property and explicitly directed her to include in that disclosure "contingent and unliquidated claims of every nature." (Ex. LL to Def.'s Stmt. of Material Facts at 10, Dkt. No.

38-38.) Yapp's schedule stated that she had no such claims. (*Id.*) Under similar circumstances, the Seventh Circuit has adopted the prevailing view that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes,* 453 F.3d at 448.

But before examining whether a plaintiff's suit should be barred on judicial estoppel grounds, it is appropriate to determine whether she has standing to pursue her claims. *Brucker v. Quirk, Inc.,* No. 13 C 5903, 2014 WL 960800, at *2 (N.D. Ill. Mar. 12, 2014). Standing is an issue properly raised on the Court's own motion. *G&S Holdings LLC v. Continental Cas. Co.,* 697 F.3d 534, 540 (7th Cir. 2012). This Court does not have jurisdiction over claims that a plaintiff lacks standing to pursue. *Calvin v. Potter,* No. 07 C 3056, 2009 WL 2588884, at *2-3 (N.D. Ill. Aug. 20, 2009).

A debtor's filing of a bankruptcy petition transfers to the bankruptcy estate exclusive ownership of all claims that had accrued as of the date of the filing and deprives her of standing to pursue those claims. 11 U.S.C. § 541(a)(1); *Biesek v. Soo Line R.R. Co.,* 440 F.3d 410, 413 (7th Cir. 2006). In the present case, Count I of Yapp's complaint seeks relief for gender-based discrimination occurring during the course of her employment. Any such treatment occurring prior to her December 22, 2010 bankruptcy filing created a potential cause of action that became the property of the bankruptcy estate. Since that cause of action was not identified as estate property, and was neither administered nor explicitly abandoned by the trustee, it remained property of the estate. 11 U.S.C. § 554(d). As a result, Yapp lacks standing to pursue claims for actions occurring before December 22, 2010. Her claims for gender-based discriminatory treatment are dismissed as to events prior to that date.

Yapp's remaining claims, *i.e.*, those that arose after the December 22, 2010 bankruptcy filing, are not barred by the doctrine of judicial estoppel. As noted above, the doctrine bars a debtor from pursing a claim after she has failed to include it in her petition's schedule of assets. *Cannon-Stokes,* 453 F.3d at 447-48. The bar is triggered by the debtor's untruthful failure to notify the trustee and her creditors of the existence of a claim that is an asset belonging to the estate. *Id.* But claims arising post-petition do not belong to the Chapter 7 debtor's estate. *In re Holstein,* 321 B.R. 229, 235 (Bkrtcy. N.D. Ill. 2005). A Chapter 7 debtor has no obligation to include in her schedule of contingent and unliquidated claims a cause of action that had not yet accrued as of the bankruptcy filing date. *Cusano v. Klein,* 264 F.3d 936, 948 n.5 (9th Cir. 2001).

Astellas, citing *Rainey v. United Parcel Service, Inc.,* 466 Fed. Appx. 542 (7th Cir. 2012), contends that a debtor has an ongoing duty to report newly acquired property while the bankruptcy estate is open and that Yapp was obliged to amend her disclosures to include claims that accrued after her petition but before bankruptcy court discharged her debts. The company argues that this obligation required her to disclose to the bankruptcy trustee claims resulting from her January 2011 termination. However, such obligations apply to debtors seeking relief under Chapter 13 of the Bankruptcy Code, but not to those, like Yapp, who petition for the protection of Chapter 7. *In re Willett,* 544 F.3d 787, 791 n.3 (7th Cir. 2008). Except for certain circumstances described in 11 U.S.C. § 541(a)(5), none of which are alleged to apply to this case, a Chapter 7 debtor does not have an ongoing obligation to disclose assets acquired after her petition is filed. *In re Adair,* 253 B.R. 85, 90-91 (9th Cir. BAP 2000).

Since Yapp's claims that accrued after she filed her bankruptcy petition were not property of the bankruptcy estate, and she was not required to list them in her petition or to

amend her filing to provide notice of their subsequent accrual, her failure to schedule them is not an appropriate basis for the application of judicial estoppel.

## II.     Yapp's Title VII Claims

Astellas also contends that it is entitled to summary judgment on Yapp's Title VII claims because she lacks sufficient evidence of discrimination or retaliation for those claims to be presented to a jury. As noted above, Yapp has standing to pursue only those claims that arose after her December 22, 2010 bankruptcy filing. The Court's analysis of the evidence she presents in opposition to Astellas' motion is accordingly confined to occurrences after that date.

To avoid summary judgment on her discrimination claim, Yapp must present evidence sufficient for jury to find that discriminatory animus motivated an adverse employment action against her. *Coleman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). Her complaint, her arguments in opposition to Astellas' motion, her responses to the company's statement of undisputed facts, and her own statement of additional facts are all devoid of evidence of gender-based animus or action during the brief period following her bankruptcy petition for which she has standing to pursue a discrimination claim. Her claims for that period are instead confined to allegations of retaliation. Summary judgment is accordingly granted in favor of Astellas as to any claim of gender based discriminatory treatment during the post-petition term of Yapp's employment.

Yapp also seeks relief under Title VII for retaliation, claiming that her January 2011 termination was precipitated by her complaints about gender discrimination. Title VII forbids an employer from discriminating against an employee who has "opposed any practice" prohibited by the statute. 42 U.S.C. § 2000e-3(a); *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 838 (7th Cir. 2009). A plaintiff can prove a Title VII retaliation claim by either the direct or indirect method of

proof. *Johnson v. Gen. Bd. of Pension & Health Benefits,* 733 F.3d 722, 727-28 (7th Cir. 2013). Under the direct method, a plaintiff must present direct or circumstantial evidence that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the two. *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir. 2008). Astellas does not dispute that Yapp's complaint about gender discrimination was protected from retaliation by Title VII, nor does the company deny that her termination was a materially adverse action. The company instead contends that Yapp cannot produce evidence of a causal link between her protected activity and her termination.

The direct method of proof permits a plaintiff to establish a causal link between protected activity and adverse action by presenting any of three types of circumstantial evidence: (1) suspicious timing, ambiguous statements, or behavior or comments directed toward the protected group; (2) evidence showing that the employer systematically gave better treatment to employees outside the protected group; and (3) evidence that the employer's justification for the adverse action is pretextual. *Silverman v. Bd. of Educ. of City of Chicago,* 637 F.3d 729, 734 (7th Cir. 2011). In this case, Yapp has presented sufficient evidence from which a jury could conclude that Astellas's stated reason for terminating her was a mere pretext. For this reason, her retaliation claim survives summary judgment.

Astellas contends that the initial decision to terminate Yapp was made because she was not meeting the company's legitimate performance expectations. In response, Yapp has produced evidence that she informed Van Sant, her supervisor, that her inability to complete the flow cytometry analysis expected of her was due to the deterioration of the blood she was given to test. (Van Sant Dep. at 54, Dkt. No. 44-1.) In deposition testimony, Van Sant discounted this explanation because a flow cytometrist hired after Yapp's departure used blood from the same

8

provider without problems. (*Id*. at 54-55.) But he also testified that, at the time of his complaints about Yapp's performance, he was not able to assess the validity of her concerns. (Van Sant Dep. at 79, Dkt. No. 38-42; Van Sant Dep. at 54-55, Dkt. No. 44-1.) In further testimony, he agreed that it was better for the purposes of the tests to use fresher blood, and that some time after Yapp's termination, the company implemented a "blood protocol" to help ensure the freshness of the blood samples. (*Id.* at 81.)

E-mail messages between Van Sant and Amy McLean, an employee in Astellas's human resources department, indicate that by the end of July 2010, Van Sant was planning to terminate Yapp by August 15 of that year. (Ex. 3 to Dichiara Decl., Dkt. No. 44-3.) At his deposition, Van Sant testified that on McLean's recommendation, the company restarted Yapp's 120-day performance plan from the beginning after she returned from medical leave in November 2010. (Van Sant Dep. 111-12, Dkt. No. 44-1.) E-mail messages between Van Sant and Alak show that by December 10, 2010, they had again discussed Yapp's termination with the company's human resources department and believed that the passage of time had sufficiently decreased the possibility of legal consequences to allow them to terminate her the following week. (Ex. 4 to Dichiara Decl., Dkt. No. 44-4.) Those messages discussing Yapp's planned termination did not include any discussion of the credit card misuse later offered as justification. And, moreover, Astellas has not put forward any evidence that the credit card issue had been discovered by Yapp's superiors prior to their renewed decision to terminate her.

Thus, the evidence presented is sufficient to support an inference that Yapp's superiors planned her termination in August 2010 and that they planned to justify this decision by citing her performance deficiencies, even though they knew at the time that they could not assess whether there was an external impediment to her performance. The evidence also supports an

9

inference that the company acknowledged and addressed that impediment after her departure. From this evidence, a jury could infer that the performance-based explanation offered for the initial termination decision was in fact pretextual.

Similarly, the evidence supports an inference that the credit card misuse justification that was ultimately offered in defense of Yapp's termination was also pretextual. Although Yapp was only one month into a supposedly restarted performance plan, Van Sant and Alak had apparently already decided to fire her and were considering the possibility that the passage of time would decrease the risk of legal consequences. The December 10, 2010 e-mail exchange that confirmed their intention to terminate her as soon as the following week contained no reference to the credit card issue later offered as the reason for her termination, and the company has not offered evidence that the discovery of that issue preceded the termination decision. This record would be sufficient to support a jury finding that the credit card issue was not in fact the true reason for Yapp's termination. Although Astellas has presented evidence of Yapp's performance deficiencies and undisputed evidence that she used her corporate credit card for personal purchases, that evidence merely raises conflicting inferences regarding the company's motives that are properly weighed at trial, not at the summary judgment stage. *Hobgood v. Ill. Gaming Bd.,* 731 F.3d 635, 648 (7th Cir. 2013). The company's motion for summary judgment as to Yapp's Title VII retaliation claim is accordingly denied.

### III. Yapp's State Common Law Retaliatory Discharge Claim

The final remaining element of Yapp's complaint is an Illinois common law claim for retaliatory discharge. For this claim, Yapp alleges that she was terminated for her allegation that the MedTox report she reviewed was fraudulent. To state a valid retaliatory discharge claim, a plaintiff must allege that the employer discharged her in retaliation for her activities and that the

discharge violates a clear mandate of public policy. *Fellhauer v. City of Geneva,* 142 Ill. 2d 495, 505, 568 N.E.2d 870, 875 (Ill. 1991). Whether a public policy exists and whether it is violated by an employee's termination are questions to be resolved by the court. *Turner v. Mem'l Med. Ctr.,* 233 Ill. 2d 494, 501-02, 911 N.E.2d 369, 374-75 (Ill. 2009).

For purposes of Illinois retaliatory discharge jurisprudence, the required clear public policy mandate may be identified by reference to sources such as the constitutions, statutes, and judicial decisions of the United States and Illinois. *Wheeler v. Caterpillar Tractor Co.,* 108 Ill. 2d 502, 510-11, 485 N.E.2d 372, 377 (Ill. 1985); *Palmateer v. Int'l Harvester Co.,* 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878 (Ill. 1981). For example, Illinois courts have recognized mandates of public policy in federal securities laws (*Johnson v. World Color Press, Inc.,* 147 Ill. App. 3d 746, 749-50, 498 N.E.2d 575, 577-78 (Ill. App. 1986)) and the state's Criminal Code (*Palmateer,* 85 Ill. 2d at 132-33, 421 N.E.2d at 879-80). On the other hand, general allegations that a public policy was violated by a plaintiff's dismissal are insufficient, and broad statements of public policies, such as "product safety," "quality health care," and "patient safety," have been held to be too general to state a retaliatory discharge claim. *Turner,* 233 Ill. 2d at 503-05, 911 N.E.2d at 375-77.

In the present case, the public policy mandates that Yapp claims were violated by her termination are a policy "to ensure the integrity of scientific research and to discourage scientific fraud," and a policy "to ensure the safety of human subjects participating in medical research." (Am. Compl., ¶¶ 78-79, Dkt. No. 12.) Yapp identifies no constitutional or statutory provisions embodying the general policy principles she invokes. She cites *Stebbings v. Univ. of Chicago,* 312 Ill. App. 3d 360, 726 N.E.2d 1136 (Ill. App. 2000), as support for the existence of a public policy mandate in favor of encouraging a medical researcher to speak up about radiation dangers

11

to human test subjects. But the *Stebbings* court located that mandate in specified statutes relating to the particular danger that radiation poses: the Radon Mitigation Act and the Radiation Protection Act of 1990. 312 Ill. App. 3d at 367-68, 726 N.E.2d at 1142. No similar statement of public policy has been presented here.

A retaliatory discharge claimant must also demonstrate that her discharge violated the public policy mandate she identifies. *Fellhauer,* 142 Ill. 2d at 505, 568 N.E.2d at 875. To support her claim that her termination violated public policy, Yapp presents a declaration that purports to explain the significance of the MedTox report she reviewed and criticized. In the declaration, Yapp states that "Defendant's continued reliance on the report compromised any research by Defendant that was related to or based upon the report," that "[b]y relying on the fraudulent MedTox report, Defendant conducted experiments and research that produced inaccurate results," and that "human patients who were participating in clinical trials were subject to unnecessary health risks." (Yapp Decl. ¶¶ 5-6, Dkt. No. 43.)

There is no doubt that these are all valid concerns in the abstract. But Yapp's declaration offers no specifics as to the drugs MedTox tested, the results of the tests, how the tests were used by Astellas, or the clinical trial risks supposedly created by the improprieties she identified. Nor does her declaration specify any fact that would support an inference that the MedTox report was to be used by anyone outside Astellas or that it would have enabled the distribution of improperly tested drugs to unsuspecting users. Yapp's declaration does not assert any fact that would suggest that the MedTox report had any significance in the areas of scientific research or public safety, or that it had any relevance other than as a tool to allow Astellas to evaluate the performance of MedTox.

Conclusory allegations such as those in Yapp's declaration, without the support of specific facts, are insufficient to raise an issue of material fact that would preclude the grant of summary judgment. *Payne v. Pauley,* 337 F.3d 767, 772-73 (7th Cir. 2003); *Trimble v. Alliance-DeKalb/Rock-Tenn Co.,* 801 F. Supp. 2d 764, 769 (N.D. Ill. 2013). Yapp offers no other evidence to demonstrate that her claim of fraud protected research integrity or public safety, or that her termination for her assessment of MedTox would have posed a threat to those principles, even if they were considered to be clearly mandated public policy.

Since a clear public policy mandate and a violation of that mandate by a plaintiff's termination are both necessary elements of an Illinois retaliatory discharge claim, Yapp's failure to establish either element is fatal to her claim. Astellas' motion for summary judgment is granted as to that claim.

## CONCLUSION

Astellas's motion for summary judgment is granted in part and denied in part. Yapp lacks standing to bring claims that had accrued as of her December 22, 2010 bankruptcy filing; thus those claims are dismissed. Moreover, she has not presented sufficient evidence of gender-based discrimination after December 22, 2010 to present any such claims to a jury. As a result, Astellas' motion for summary judgment is also granted as to any claims of discrimination that accrued after Yapp's bankruptcy filing. However, Yapp has presented evidence creating a genuine issue of material fact as to her Title VII retaliation claim, and therefore the company's motion for summary judgment is denied as to that claim. Finally, she has not presented evidence that would permit a jury to find in her favor on her Illinois retaliatory discharge claim. Astellas' motion for summary judgment on that claim is granted.

ENTERED:

Dated: March 20, 2015

_____
Andrea R. Wood
United States District Judge